[Cite as *BAC Home Loans Servs. v. Meder Invests. L.L.C.*, 2012-Ohio-3466.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97965

---

## BAC HOME LOANS SERVICING

PLAINTIFF-APPELLANT

vs.

## MEDER INVESTMENTS LLC

DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-754817

**BEFORE:** E. Gallagher, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 2, 2012

**ATTORNEY FOR APPELLANT**

Eric T. Deighton
Carlisle, McNellie, Rini, Kramer & Ulrich Co., L.P.A.
24755 Chagrin Blvd.
Suite 200
Cleveland, Ohio    44122


**ATTORNEY FOR APPELLEES**

**For Meder Investments LLC**

Sheryl Perram, Statutory Agent
6876 Greenleaf Avenue
Cleveland, Ohio    44130

**For Sheryl A. Perram**

Sheryl A. Perram, pro se
6876 Greenleaf Avenue
Cleveland, Ohio    44130

EILEEN A. GALLAGHER, J.:

**{¶1}** Plaintiff-appellant, BAC Home Loans Servicing, L.P., appeals the judgment of the Cuyahoga County Court of Common Pleas that adopted the magistrate's decision granting foreclosure. Appellant argues that the magistrate improperly applied Ohio's open-end mortgage statute, R.C. 5301.232, to a mortgage containing a negative amortization provision. For the following reasons, we affirm.

**{¶2}** Appellant filed a foreclosure action against defendants Meder Investments, LLC ("Meder") and Sheryl A. Perram on May 9, 2011. The complaint alleges that appellant is the holder of a promissory note on which Perram had defaulted in payment. Appellant claimed there remained an unpaid balance of $96,840.15 plus interest at the rate of 4 per cent per annum from June 1, 2010, and they sought judgment in said amount. The complaint further alleges that appellant is the holder of a mortgage deed securing the payment of the promissory note and that the mortgage is a valid and first lien upon the premises described in the mortgage deed. Meder and Perram failed to answer the complaint.

**{¶3}** The record reveals that the promissory note and mortgage were executed on March 29, 2006, in favor of America's Wholesale Lender. The note and mortgage were eventually assigned to appellant on October 1, 2010. The property covered by the

mortgage is stated as 4215 Longwood Avenue in Parma, Ohio 44134. The preliminary judicial report, filed May 9, 2011, reflects that the record title to the land was vested in Meder.[1] The report reveals that Perram executed a quit claim deed conveying the property to Meder on October 16, 2008 and said deed was recorded on October 24, 2008 and re-recorded on February 3, 2009.

**{¶4}** On November 15, 2011, appellant filed a motion for default judgment. The foreclosure magistrate granted default judgment in favor of appellant and ordered appellant to file an affidavit explaining its claimed principal balance.

**{¶5}** Appellant, in complying with that order, provided that the principal balance set forth in appellant's complaint, $96,840.15, was greater than the original principal balance, $88,200.00, because the promissory note provided for negative amortization. Section 3(E) of the promissory note, titled "Additions to My Unpaid Principal" states:

> [M]y Minium Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and

---

[1]As of the effective date of the preliminary judicial report: September 17, 2010.

will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate * * *.

{¶6} Section 3(F) of the promissory note provides that the unpaid principal may never exceed 115 percent of the principal originally borrowed. Identical language is found in paragraphs 3(E) and 3(F) of the Adjustable Rate Rider to the mortgage.

{¶7} The magistrate issued his decision on January 11, 2012 awarding appellant judgment against Perram in the amount of $96,840.15, plus interest, pursuant to the promissory note. The magistrate further found that Perram executed the mortgage to secure payment of the promissory note and that the mortgage was a valid and first lien upon the premises securing the sum of $88,200 plus interest. In the event of a sheriff's sale, the magistrate's order limited appellant's proceeds from the sale to $88,200 plus interest, along with any sums advanced for real estate taxes, insurance premiums, and property protection.

{¶8} Appellant objected to the magistrate's decision on January 18, 2012, arguing that the magistrate failed to award appellant the full principal amount of $96,840.15 in the order of distribution from the mortgage. The trial court overruled appellant's objection stating:

> In essence, [appellant] argues in this objection that its mortgage should be treated as an open end mortgage and its negatively amortized principal added to the secured sum under the mortgage. An open end mortgage is a mortgage providing for loan advances made after recording of the mortgage,

but only up to a stated total. R.C. SEC. 5301.232(A). An open-end mortgage must contain the words "open-end mortgage". *Id.* Advances are secured as they are made up [to] [sic] the amount stated. R.C. SEC. 5301.232(B). [Appellant's] mortgage does not contain the words "open-end mortgage". It does not provide a limit of advances. It is not an open-end mortgage. *See Id.* It is limited to securing the sum stated, $88,200.00 plus interest.

{¶9} The trial court adopted the magistrate's decision and appellant appeals advancing a sole assignment of error:

> The trial court abused its discretion when it made the unreasonable holding that because [appellant's] mortgage did not meet the statutory requirements of an Open-End Mortgage, the negative amortization clauses of the mortgage would not be enforced.

{¶10} We review a trial court's adoption of a magistrate's decision for an abuse of discretion. *Wade v. Wade*, 113 Ohio App.3d 414, 419, 680 N.E.2d 1305 (11th Dist.1996). An abuse of discretion exists when a decision is not merely wrong, but arbitrary, unreasonable, or unconscionable. *Covington v. Saffold*, 150 Ohio App.3d 126, 2002-Ohio-6280, 779 N.E.2d 838, ¶ 27 (10th Dist.), citing *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.*, 63 Ohio St.3d 498, 506, 589 N.E.2d 24 (1992). However, insofar as the trial court's decision involves statutory interpretation, our review of issues of law is de novo. *Miller v. Painters Supply & Equip. Co.*, 8th Dist. No. 95614, 2011-Ohio-3976, ¶ 10, citing *Searles v. Germain Ford of Columbus, L.L.C.*, 174 Ohio

App.3d 555, 2007-Ohio-7140, 883 N.E.2d 480, ¶ 8 (10th Dist.).

{¶11} In this appeal, we are called upon to decide whether a mortgage with a negative amortization provision is required to comply with Ohio's open-end mortgage statute, R.C. 5301.232.

{¶12} An open-end mortgage is defined as: "a mortgage permitting the mortgagor to borrow additional money under the same mortgage, with certain conditions, usually as to the assets of the mortgage." *Lapp v. Anzells*, 8th Dist. No. 74487, 1999 Ohio App. LEXIS 3849 (Aug. 19, 1999), citing *Black's Law Dictionary* 912 (5th Ed.Rev.1979).

{¶13} R.C. 5301.232(A) provides that:

A mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record, to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum amount of loan indebtedness which the mortgage states may be outstanding at any time. With respect to such unpaid balances, division (B) of this section is applicable if the mortgage states, in substance or effect, that the parties thereto intend that the mortgage shall secure the same, the maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time, and contains at the beginning thereof the words "OPEN-END MORTGAGE. "

{¶14} R.C. 5301.232(B) provides that a mortgage complying with division (A) is a lien on the premises for the full amount of the total unpaid loan indebtedness including unpaid balances of such advances regardless of the time such advances are made. Only advances that the holder of the mortgage is not obligated to make are subordinate to a later lien or encumbrance upon the property. Division (F) states that this section does

not prohibit the use of other types of mortgages permitted by law.

**{¶15}** In contrast, *Black's Law Dictionary* (6th Ed.) defines negative amortization as occurring,

> when monthly payments are not large enough to cover all of the interest cost of an adjustable rate mortgage. The interest rate that isn't covered is added to the loan's principal, which then could increase to more than the amount borrowed.

**{¶16}** Based on the above definitions, we find R.C. 5301.232 inapplicable to mortgages containing negative amortization provisions. Negative amortization occurs in situations where the interest payments due are being deferred and collapsed into the outstanding principal balance. In such a situation, the mortgagor is not borrowing additional money or receiving a loan advance pursuant to the open-end mortgage under R.C. 5301.232. As such we find that the magistrate incorrectly applied the analysis under R.C. 5301.232 to appellant's negative amortization mortgage.

**{¶17}** Appellant has failed to demonstrate that it qualifies for protection under the Ohio Revised Code statutes from which appellant claims it derives the authority to create a negative amortization loan. Appellant cites R.C. 1161.37 and 1151.295, which allow a savings bank and a building and loan association to create certain loans that provide for "periods of negative amortization."

**{¶18}** R.C. 1161.01(A)(1) defines a "savings bank" as

> a corporation that has its home office located in this state, that is organized for the purposes of receiving deposits and raising money to be loaned to its members or to others, and that maintains at least sixty percent of its total assets in the housing-related and other investments set forth in section

7701(a)(19)(C) of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C.A. 1, as amended. "Savings bank" does not include banks, savings and loan associations, or credit unions.

{¶19} Loans under R.C. 1151.295 are to be made by a building and loan association for the purposes of "property alteration, repair, or improvement, or for the equipping or furnishing of any residential real property."

{¶20} Appellant offers no argument and cites no evidence in the record that indicates that the entity that created the subject promissory note and mortgage, America's Wholesale Lender, qualified as either a savings bank or a building and loan association, or that the loan was made for "property alteration, repair, or improvement, or for the equipping or furnishing of any residential real property." Further, appellant failed to offer any such arguments in its objection to the magistrate's decision before the trial court, which is required under Civ.R. 53(D)(3)(b); all grounds for objection must be specific and stated with particularity. *In re Estate of Mason*, 184 Ohio App. 3d 544, 2009-Ohio-5494, 921 N.E.2d 705, ¶ 36 (8th Dist.). As such, we find appellant's argument for protection under these statutes to be without merit.[2]

{¶21} Appellant's sole assignment of error is overruled.

{¶22} The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

---

[2]Appellant did not argue before the trial court or on appeal that its negative amortization loan qualified for protection under R.C. 1151.29 or any other provision of law.

The court finds there were reasonable grounds for this appeal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR